Jon H. Rogers, Attorney at Law (6434)
825 North 300 West, Suite N144
Northgate Park Business Center
Salt Lake City, UT 84103
Telephone: (801) 532-6272
Email: RogersConsumerLaw@gmail.com

---

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **ELBERT OTIS,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**SYNCHRONY BANK and ALLIED INTERSTATE, LLC.,**<br><br>    **Defendant.** | **COMPLAINT**<br><br>(*Jury Trial Demanded*)<br><br><br>**Case No.:** |

COMES NOW, Plaintiff, ELBERT OTIS, by and through the undersigned counsel, and sues Defendants, SYNCHRONY BANK (hereinafter "SYNCHRONY"), ALLIED INTERSTATE, LLC (hereinafter "ALLIED"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1.  The TCPA was enacted to prevent companies like Defendant from invading American citizen's privacy and to prevent abusive "robo-calls."

1

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the auto-dialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7. The alleged violations described herein occurred in Salt Lake County, Utah. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8. Plaintiff is a natural person, and citizen of the State of Mississippi, residing in Natchez, Adams County, Mississippi.

9. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10. Defendant, SYNCHRONY BANK (hereinafter "SYNCHRONY"), is a corporation with its principal place of business at 170 West Election Road, Suite 125, Draper, UT 84020, and conducts business in the state of Mississippi.

11. Defendant, SYNCHRONY, consents of and has knowledge and control of the collection activities of their agents and representatives, including supervisors, managers, affiliates, subsidiaries, divisions, employees, servants, partners, agents, vendors, assignees, transferees, collectors and/or contractors; including, but not limited to Defendant "ALLIED INTERSTATE LLC."

12. Defendant ALLIED INTERSTATE LLC (hereinafter "ALLIED") is a corporation with its principal place of business at 12755 Hwy 55, Suite 300, Plymouth, MN 55411 and conducts business in the state of Utah through its Registered Agent C T Corporation System, located At 1108 E South Union Ave Midvale, Utah 84047.

13. Defendants called Plaintiff approximately three hundred (300) times in an attempt to collect an alleged debt.

14. Defendants attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

15. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (601) ***-7486, and was the called party and recipient of Defendant's calls.

16. Upon receipt of the calls from Defendants, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the follow telephone numbers: (832) 839-4508, (480) 824-0726, (763) 486-1773, (980) 500-7125, (214) 459-4568, (281) 254-8218, (763) 486-1774.

17. Upon information and belief, some or all of the calls Defendants made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "auto-dialer calls"). Plaintiff will testify that his knew it was an auto-dialer because of the vast number of calls he received and because he heard a pause when he answered his phone before a live agent/representative of Defendants came on the line and he received prerecorded messages from Defendants.

18.     Defendants intentionally harassed and abused Plaintiff on numerous occasions by calling several times in the same hour, during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

19.     On several occasions over the last four (4) years, Plaintiff instructed Defendants' agent(s)/representative(s) to stop calling his cellular telephone.

20.     In or about June of 2017, Plaintiff received a call from SYNCHRONY, met with an extended pause, eventually was connected to a live representative, explained to the agent/representative that he was aware of his obligations, and demanded that the Defendant cease placing calls to her aforementioned cellular telephone number.

21.     During the aforementioned phone conversation in or about June of 2017 with SYNCHRONY'S agent/representative, Plaintiff unequivocally revoked any express consent Defendants may have had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an automatic telephone dialing system or a pre-recorded or artificial voice.

22.     Each subsequent call the Defendant made to the Plaintiff's aforementioned cellular telephone number was done so without the "express consent" of the Plaintiff.

23. Each subsequent call the Defendants made to the Plaintiff's aforementioned cellular telephone number was knowing and willful.

24. Despite actual knowledge of their wrongdoing, the Defendants continued the campaign of abuse, calling the Plaintiff despite the Plaintiff revoking any express consent the Defendant may have had to call his aforementioned cellular telephone number.

25. Each of Plaintiff's demands for the harassment to end was ignored.

26. Additionally, on or about August 8, 2017, due to the continued automated calls to his cellular phone, Plaintiff answered another phone call from Defendants, met with an extended pause, held the line to be connected to an agent/representative of Defendants, was eventual connected to an agent/representative of Defendants, explained to the agent that he had already requested they stop called his cell phone and again demanded that Defendants stop calling his cellular telephone number.

27. Despite yet again clearly and unequivocally revoking any consent Defendants may have believed they had to call Plaintiff on his cellular telephone, Defendants continued to place automated calls to Plaintiff.

28. Defendants have corporate policies to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

29. Defendants have corporate policies to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to Plaintiff's cellular telephone in this case, with no way for the consumer, or Defendants to remove the number.

30. Defendants' corporate policies are structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Defendants they do not wish to be called.

31. Defendants have numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

32. Defendants have numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call despite being requested to stop.

33. Defendants have had numerous complaints against them from consumers across the country asking to not be called, however Defendants continues to call these individuals.

34. Defendants' corporate policies provided no means for Plaintiff to have Plaintiff's number removed from Defendants' call lists.

35. Defendants have corporate policies to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

36. Not one of Defendants' telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

37. Defendants willfully and/or knowingly violated the TCPA with respect to Plaintiff.

38. From each and every call placed without express consent by Defendants to Plaintiff's cellular telephone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon his right of seclusion.

39. From each and every call without express consent placed by Defendants to Plaintiff's cellular telephone, Plaintiff suffered the injury of the occupation of his cellular telephone line and cellular telephone by unwelcome calls, making the telephone unavailable for legitimate callers or outgoing calls while the telephone was ringing from Defendants' call.

40. From each and every call placed without express consent by Defendants to Plaintiff's cellular telephone, Plaintiff suffered the injury of unnecessary expenditure of his time. For calls he answered, the time he spent on

the call was unnecessary as he repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the telephone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

42. Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

43. Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone where a voice message was left which occupied space in Plaintiff's telephone or network.

44. Each and every call placed without express consent by Defendants to Plaintiff's cellular telephone resulted in the injury of a trespass to Plaintiff's chattel, namely his cellular telephone and his cellular telephone services.

45. As a result of the calls described above, Plaintiff suffered an invasion of privacy. Plaintiff was also affect in a personal and individualized way by stress, anxiety, embarrassment, and aggravation.

## COUNT I
## SYNCHRONY BANK
### (Violation of the TCPA)

46. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

47. SYNCHRONY BANK willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified SYNCHRONY BANK that he wished for the calls to stop.

48. SYNCHRONY BANK repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against SYNCHRONY BANK for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
## ALLIED INTERSTATE, LLC
### (Violation of the TCPA)

49. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

50. ALLIED INTERSTATE, LLC willfully violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified ALLIED INTERSTATE, LLC that he wished for the calls to stop.

51. ALLIED INTERSTATE, LLC repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory

damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT III
## ALLIED INTERSTATE, LLC
### (Violation of the FDCPA)

52. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-five (45) as if fully set forth herein.

53. At all times relevant to this action ALLIED INTERSTATE, LLC is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

54. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

55. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

56. ALLIED INTERSTATE, LLC has violated 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against ALLIED INTERSTATE, LLC for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

        Respectfully submitted,

        /s/ Jon H. Rogers
        Jon H. Rogers, Attorney at Law
        Utah Bar No.: 6430
        825 North 300 West, Suite N144
        Northgate Park Business Center
        Salt Lake City, Utah 84103
        Telephone:       (801) 532-6272
        Telefacsimile:    (801) 532-4192
        E-Mail: RogersConsumerLaw@gmail.com